IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALFREDA MCCLOUD, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CASE NO. 3:19-CV-201-ECM-KFP |
| | ) |
| EAST ALABAMA MEDICAL CENTER, | ) |
| | ) |
| | ) |
|    Defendant. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter comes before the Court on Defendant East Alabama Medical Center's Motion to Dismiss (Doc. 21) Plaintiff Alfreda McCloud's Amended Complaint (Doc. 20). McCloud alleges violations of Title VII for race discrimination and "race-based cold and hostile working environment." Upon consideration, the Court RECOMMENDS that McCloud's Amended Complaint be dismissed with prejudice.

## **BACKGROUND**

McCloud, pro se, filed her initial Complaint (Doc. 1) on March 20, 2019. After East Alabama Medical Center (EAMC) moved to dismiss the Complaint (Doc. 8), McCloud responded (Doc. 11). The Court ordered that she amend the Complaint by May 20, 2019. Doc. 13. McCloud failed to meet the deadline. EAMC renewed its efforts to attack the pleading and moved for a recommendation of dismissal with prejudice. Doc. 14. In its earlier Order (Doc. 13) allowing McCloud to amend her Complaint, the Court had warned McCloud about the impermissible shotgun pleading style of the initial Complaint. For

example, it was not concise and incorporated by reference all prior paragraphs into the second claim for relief.[1]

On May 23, 2019, the Court ordered McCloud to show cause why the Court should not recommend dismissal of her Complaint. Doc. 15. McCloud responded on May 25, 2019, providing her analysis of the claims but again filing her initial Complaint, her EEOC Charge, and other documents previously submitted with the Complaint. Docs. 16; 17.

Again, the Court directed McCloud to amend her Complaint (Doc. 18), and this time she did (Doc. 20). The Amended Complaint provides a statement of alleged damages, an explanation of the parties, and some factual allegations. With the Amended Complaint, McCloud again attaches her EEOC charge and the initial Complaint with the same evidentiary exhibits. *See* Docs. 20-1 (Ex. A) – Doc. 20-5 (Ex. E). EAMC moved to dismiss the Amended Complaint for failure to state a claim on which relief could be granted. Doc. 21. McCloud was given an opportunity to show cause why the Court should not dismiss the pleading (Doc. 22), and she filed a response (Doc. 23). Taking the facts of McCloud's Amended Complaint as true, she asserts the following:

McCloud, who is black, was employed with EAMC as a respiratory therapist. Most of the employees with whom McCloud worked are white. McCloud's employment was terminated "for a list of concerns" regarding patient safety and patient care, which McCloud says came from white co-workers in the intensive care unit. The complaints from

---

[1] *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations . . . .").

the ICU about McCloud included criticisms that McCloud was "argumentative with every request"; "appeared annoyed with" staff "asking her . . . to do anything"; was "absent from the unit"; and "doesn't spend any time in the unit." The ICU staff reported that "[s]he's going to kill someone. She is not safe." During her period of employment from February 12, 2018, to June 19, 2018, her supervisor did not hire any black individuals. During the internal appeal of her termination, McCloud received, for the first time, disciplinary documents of the concerns lodged against her. The chief nursing officer upheld her termination based on claims that McCloud's attitude was not proper, that she lacked skills, and that she had missed opportunities to correct the deficiencies.

Because she performed her job duties and was qualified, McCloud believes the complaints and her termination based on them were pretextual. She believes the real reason for the complaints and her termination is her race.

## STANDARD

While pro se pleadings are held to a lesser standard than those prepared by attorneys and "are thus construed liberally," *see Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), pro se litigants still must comply with the Federal Rules of Civil Procedure. *Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009). Indeed, when a pro se litigant has been forewarned, dismissal for failure to obey a court order is generally not an abuse of discretion. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Here, McCloud has been given multiple opportunities to state a claim.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that

3

each factual allegation be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1). When considering a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). The court must ask whether there are allegations that are no more than conclusions. Claims that fall into this category are discarded. The court next considers whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If there are none, the complaint will be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## DISCUSSION

### McCloud has failed to allege race discrimination.

The Court warned McCloud of the potentially fatal legal flaws that could subject her suit to a recommendation of dismissal. Doc. 13. She did not heed the warning. While McCloud is not required to plead every fact of a prima facie case, at a minimum, she must assert facts demonstrating an intent to discriminate. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017) ("A Title VII complaint need not allege facts sufficient to make out a classic prima facie case, but must simply provide enough factual matter to plausibly suggest intentional discrimination."); *see also Some v. Honda Mfg. of Ala., LLC*, No. 2:18-CV-2120-TMP, 2019 WL 1466240, at *5 (N.D. Ala. Apr. 3, 2019) ("Although at the Rule 12 dismissal stage the plaintiff need not specifically plead every element of her claim, the complaint must contain direct or inferential allegations respecting all the material

4

elements necessary to sustain a recovery.") (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)).

McCloud has alleged she is black and her employment was terminated. Like the Complaint, however, the Amended Complaint fails to adduce facts making a connection, i.e., supporting an inference, to racial motivation. *See Byars v. UAB Hosp. Mgmt., LLC*, No. 2:14-CV-01338-WMA, 2014 WL 4968213, at *1 (N.D. Ala. Oct. 3, 2014) ("Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case . . . it must provide enough factual matter (taken as true) to suggest intentional race discrimination.") (internal quotation omitted). In the section of her Amended Complaint titled "Standard," she seems to acknowledge the speculation on which her claims are based: "My co-workers at EAMC, working in the Intensive Care Unit, were not terminated for concerns or complaints. Why was I terminated? A black female?" Doc. 20 at 3. McCloud has not pointed, for example, to anyone outside of her protected class who was treated differently for materially similar conduct. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019) (holding that a plaintiff proceeding under *McDonnell Douglas* must show that she and her comparators are "similarly situated in all material respects").

Though she alleges that most of her coworkers are white, this allegation is insufficient to meet the pleading threshold of different treatment. McCloud makes ambiguous allegations that her coworkers were "very open on things" and "a few" white coworkers were "well outspoken and very demanding." She offers the rhetorical question, "Were they terminated?" Doc. 20 at 3. Together, the allegations do not demonstrate the

5

plausibility of a comparator. The *Lewis* court explained "[t]reating *different* cases differently is not discriminatory, let alone intentionally so." *Lewis*, 918 F.3d at 1222. In the context of showing that a plaintiff and her comparators are sufficiently similar, in an objective sense, the Eleventh Circuit outlined factors of a similarly situated comparator: engaged in the same basic conduct, subjected to the same policy, under the jurisdiction of the same supervisor (ordinarily, although not invariably), and shared disciplinary history with the plaintiff. *Id*. at 1227-28. McCloud's nondescript allegations provide no indication that the referenced coworkers satisfy any of these (or other) factors to suggest they could be similarly situated in all material respects.

While revealing a comparator is not the only way a plaintiff may assert a race discrimination claim, McCloud has not sufficiently alleged any additional facts to otherwise support her race discrimination claim. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). If McCloud had asserted facts indicating a "convincing mosaic of circumstantial evidence" to support that the alleged harm and her race are related by more than her own supposition, the claim may have survived. *See id. n.4*. ("[A]n inference [of discrimination] is not a suspicion or a guess.") (internal citations and quotations omitted). She did not. *See Trask v. Sec'y, Dep't of Vet. Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016) ("Employment discrimination claims all require proof of discriminatory intent."). Instead, McCloud's factual allegations amount to a belief that, because she worked primarily with people outside her race, her termination must have been because her race is different. That kind of speculation will not nudge her claim forward.

Because she has alleged no set of facts that could plausibly support a race discrimination claim, the Court recommends it be dismissed.

### McCloud has failed to allege a racially hostile work environment.

The Court interprets McCloud's claim for a "cold and hostile working environment" as one asserting a race-based Title VII hostile work environment claim. It is unclear what facts McCloud professes for the labeled "cold" work environment. Nevertheless, Title VII is not a shield against all undesirable circumstances and simply working in a "cold" environment would not support an entitlement to relief. "The 'standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.''" *Byrne v. Ala. Alcoholic Beverage Control Bd.*, 635 F. Supp. 2d 1281, 1295 (M.D. Ala. 2009) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). "[I]n order to establish a hostile work environment claim, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

Like her race discrimination claim, McCloud's hostile work environment claim does not rise above a speculative level. McCloud alleges she is black and that she worked "with whites that's allowed to do and say whatever they want to in any way to hurt a black person." McCloud does not, however, assert facts to support her conclusion that *she* was

7

subjected to a race-based hostile working environment.[2] For example, McCloud does not assert facts indicative that the coworkers harassed *her because of her race* by "whatever" they said or that they acted *based on her race* with their criticisms of her working style. Indeed, McCloud fails altogether to allege who actually said what, to whom, and when any such statement (e.g., "whatever") was even made. *See, e.g. Washington v. Util. Trailer Mfg. Co.*, No. 1:13-CV-610-WEF, 2014 WL 2831189, at *5 (M.D. Ala. June 23, 2014) ("The Court cannot evaluate the plausibility of Plaintiffs' racial harassment claim based on the [applicable] standards . . . until, as requested by this Court repeatedly now, Plaintiffs give examples of when the statements are alleged to have been made, or by whom, or to whom, or where and approximately how frequently and over what time period.") (internal quotations and citations omitted). McCloud says the environment was racially hostile, but that is not enough. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (The court "[is] not . . . required to accept the labels and conclusion in the complaint as true.").

"The Eleventh Circuit Court of Appeals has explained that the principles set forth in *Twombly* and *Iqbal* require the complaint to allege sufficient facts to 'raise a right to relief above the speculative level.'" *Some*, 2019 WL 1466240, at *3 (quoting *Speaker v. U.S. Dep't of Health and Human Servs. Ctr. for Disease Control and Prevention*, 623 F.3d 1371,

---

[2] McCloud's Amended Complaint sets forth no facts clearly related only to this count. Her initial Complaint, which is attached to the Amended Complaint, consists of two allegations under the "race-based cold and hostile working environment" cause of action. In both paragraphs, McCloud references the opening 14 paragraphs of the Complaint including the statement of facts. She offers not one additional factual allegation under this cause of action. This tactic flies in the face of the pleading rules and the warning the Court gave McCloud about shotgun complaints like this one. *See* Doc. 13.

1380 (11th Cir. 2010)). McCloud's unenhanced characterization of her workplace as a hostile environment does not get there.

Even if McCloud could connect racial hostility to what she claims, McCloud does not provide allegations of objectively "severe or pervasive" harassment that would alter the terms and conditions of McCloud's employment. *McCray v. Auburn Univ. Montgomery*, No. 2:11-CV-714-WHA, 2011 WL 6140993, at *2 (M.D. Ala. Dec. 8, 2011) ("[T]o plead a hostile work environment claim the plaintiff is 'required to allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.'") (quoting *Edwards v. Prime, Inc*., 602 F.3d 1276, 1300 (11th Cir.2010)). When considering whether the conduct is sufficiently severe or pervasive, a court must evaluate the totality of the circumstances in assessing how a reasonable objective person would perceive the alleged conduct, including:

> (1) the frequency of the conduct; (2) its severity; (3) whether it was physically threatening or humiliating; and (4) whether it unreasonably interfered with [the plaintiff's] work performance. . . . However, teasing, offhand comments, and isolated incidents do not constitute discriminatory changes in the terms, conditions, or privileges of employment. To the contrary, the workplace must be permeated with discriminatory intimidation, ridicule, and insult.

*Greywoode v. Sci. Applications Int'l Corp.*, 943 F. Supp. 2d 1355, 1373 (M.D. Ala. 2013) (internal quotations and citations omitted); *see also Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014).

Assuming a race-based connection—a herculean leap on the alleged facts—the coworkers' complaints and statements saying "whatever they want," at best, amount to isolated incidents or minor slights. McCloud was employed for approximately four months. Before her termination, white ICU employees complained about her, including that she was argumentative and not sufficiently present in the unit and, at some unspecified time, unidentified white employees "d[id] and sa[id] whatever they want to in any way to hurt a black person." The allegations are too conclusory and vague to suggest they are of the requisite frequency or threatening nature, for example, to support a hostile work environment claim. McCloud has not put forward facts indicative of severe or pervasive race-based conduct, and her incorporation of the race discrimination allegations fails to further her hostile work environment claim. *See Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019) (affirming dismissal of hostile work environment claim and noting "we don't know who in the City created a hostile work environment, how any of this was done, or who was affected by the claimed misconduct. In essence, Nurse has taken his Title VII race discrimination claim and alleged in an utterly conclusory fashion that this discrimination created a hostile work environment. He has offered nothing further to establish a hostile work environment.").

Undoubtedly, McCloud was unhappy about the criticisms she received from her coworkers, and she subjectively believes the complaints about her job performance were

racially motivated. Being the subject of performance-based criticisms and being aware of or hearing nondescript statements from mostly unidentified coworkers at unspecified times will not support a plausible hostile work environment claim. Rule 8 requires more. McCloud fails to put forward allegations that plausibly give rise to an entitlement to relief for a racially hostile work environment claim, and the Court recommends the claim be dismissed accordingly.

## CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS this case be DISMISSED with prejudice for failure to state a claim. It is further

ORDERED that **on or before October 19, 2020**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Sec.,*

*Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 5th day of October, 2020.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE